IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

| | |
|---|---|
| SARAH DILLARD §<br>§<br>Plaintiff, §<br>§<br>v. §<br>§<br>INTERNACIONAL REALTY §<br>MANAGEMENT, LLC & L. MIGUEL §<br>ARCE, §<br>§<br>Defendants. § | Case No. 1:22-cv-1215-DAE |

**JOINT REPORT REGARDING STATUS OF ISSUES
RAISED IN MOTION TO COMPEL [DOC. 27]**

Pursuant to the Court's September 29, 2023 Order (Doc. 33), Plaintiff Sarah Dillard and Defendants Internacional Realty Management, LLC ("IRM") and L. Miguel Arce hereby provide the following status report on the issues raised in Plaintiff's Motion to Compel (Doc. 27):

**STATUS OF ISSUES RAISED IN MOTION TO COMPEL**

As set forth below, there are still outstanding issues that require Court resolution relating to the Motion to Compel. Although Defendants have produced some of the information requested in the Motion to Compel, as set forth below in the parties' respective positions, Plaintiff maintains that Court intervention is required to resolve significant differences and deviations from the Rules. Defendants disagree.

**PLAINTIFF'S POSITION:**

**A.**   *Introduction and Relief Requested*

As set forth further below, Plaintiff identifies the following issues that require Court resolution:

1

1) <u>Defendants' Boilerplate Objections</u>: As discussed in the Motion to Compel, Defendants have asserted general and boilerplate objections in response to every single document request that Plaintiff has issued, and Defendants have refused to withdraw those objections, despite the Motion to Compel and multiple follow up meet and confer conferences. (*See* Doc. 27-1, Ex. A at Exs. 2-8; Hudson Decl., attached hereto as Exhibit A at Exs. 3-8.) Defendants have also refused to voluntarily identify the documents they are withholding under those boilerplate objections pursuant to Rule 34. Plaintiff has now spent several hours on just one set of document requests in an effort to obtain straightforward answers to the question of whether Defendants have withheld documents on the basis of any of their objections.

After the 2015 Amendments to Federal Rule of Civil Procedure 34, this should have never have occurred. Rule 34(b)(2)(C) prohibits this practice and requires specific objections, calling on Defendants to identify the documents they are withholding. Plaintiff asks that the Court deem all of Defendants' objections waived and stricken from Defendants' discovery responses. *See Keycorp v. Holland*, No. 3:16-CV-1948-D, 2016 WL 6277813, at *12 (N.D. Tex. Oct. 26, 2016) (deeming waived general and boilerplate objections that did not meet the specificity requirement of Rule 34); *Lewis v. E. Baton Rouge Par.*, No. 16-352-JWD-RLB, 2018 WL 2921104, at *6 (M.D. La. June 11, 2018) (deeming waived general, boilerplate objections).

2) <u>Defendants' Refusal to Follow the Parties' ESI Protocol</u>: At the outset of discovery, Defendants agreed to forensically gather electronically stored information ("ESI") from the custodian list and agreed to run search terms through the data collected. But despite that agreement (Doc. 21), Defendants have refused to run Plaintiff's proposed list of search terms or provide any information concerning the search terms that have been run. This violates the terms of the parties' ESI Protocol and Rule 34. The end result is a lack of transparency into the discovery gathering and

production process such that Defendants object that the requests are overly broad yet refuse to apply Plaintiff's search terms, which would further narrow or clarify those requests.

Plaintiff asks that the Court order Defendants to redo their ESI collection in accordance with the parties' agreement, and order Defendants' to apply Plaintiff's search terms to the forensically collected data so that documents requested by Plaintiff can be produced. Unfortunately, active involvement by the Court for Defendants' efforts is required to police compliance, and Plaintiff requests regular discovery status hearings to effectuate that compliance.

3) <u>Defendants' continued refusal to provide financial documents sufficient to calculate Plaintiff's damages</u>: After Plaintiff filed her Motion to Compel, Defendants produced information concerning promote payments paid to other male employees. Defendants continue to refuse to produce other financial information, for example, financial statements sufficient to demonstrate the Company's revenue and profits. This is how Plaintiff's salary (profit share) would be calculated for the purposes of damages. For those promote payments that have been produced, Defendants have also refused to produce waterfall calculation sheets or other back up data to ensure that these payments have been calculated properly. Plaintiff requests that the Court order the production of these financial documents.

4) <u>Plaintiff's request for attorneys' fees incurred in bringing this Motion</u>: If successful on this Motion, Plaintiff requests leave to prove up under separate cover her attorneys' fees incurred in connection with the Motion.

Additional background and legal authority is set forth below.

### A. *Summary of Plaintiff's Attempts to Confer Regarding ESI Preservation, Collection and Production Issues*

A timeline of Plaintiff's attempts to confer on the Motion Compel is set forth in the Hudson Declaration, attached hereto as Exhibit A and incorporated herein by reference.

Specifically, with respect to the preservation and collection of ESI, Plaintiff raised concerns regarding Defendants' preservation in the very first discovery planning conference conducted in the case in March 2023. On March 10, 2023, in accordance with Rules 16 and 26(f), the parties conducted an initial discovery planning conference. (Ex. A ¶¶ 4-5.) In that call, counsel for Plaintiff raised concerns that critical evidence in the case had already been spoiled and asked that Defendants to take all steps to preserve evidence. For Defendants' counsel's benefit, Plaintiff's counsel described an incident that occurred in or about early July 2020, wherein Mr. Arce, who was going through a contentious divorce at the time, stood over Ms. Dillard's shoulder at work and made her delete her entire email inbox in order to destroy communications between them. (*See* Dillard Dep. Tr., attached as Exhibit 1 to Hudson Decl.) Upon relaying those concerns, Plaintiff's counsel was assured by Defendants' counsel that all steps would be taken to preserve electronic information. (Hudson Decl. ¶ 7.)

Flash forward to June 2023, when Plaintiff's requested a further technical discussion concerning the collection and production of ESI. (*See id.* ¶¶ 8-9.) In that call, counsel for Plaintiff suggested that the parties forensically gather ESI from their respective sources. Specifically, referencing the spoliation concerns that counsel had previously been discussed in the March conference, Plaintiff's counsel indicated a preference that all ESI be forensically collected per industry standards from native sources and from certain, to-be-identified custodians. Defendants' counsel readily agreed to do that, and expressed *no reservations or objections* to that proposal. (*Id.* ¶ 9.) Although that presented a heavier and more costly burden for Plaintiff as an individual, Plaintiff readily agreed to have her devices forensically imaged and preserved. (*Id.* ¶ 10.) It was therefore agreed that that the relevant electronic discovery would be forensically preserved and gathered from the original source, with metadata intact.

4

With that agreement in place, the parties' began to negotiate the finer points of an ESI Protocol and custodian list, including the metadata fields. As this Court is already aware, it took months to negotiate the ESI protocol. (*See* Doc. 23 at 5-6.) After months of protracted negotiation, the Stipulated ESI Protocol was finally filed on August 14, 2023. (Doc. 21.)

The ESI protocol recites, in relevant part:

1.  **Types of ESI to be Produced**: The parties are separately negotiating as to the scope of their respective ESI search and production obligations, including the identification of sources to be searched.

2.  **The Search**: *It is the producing party's obligation to run the agreed-upon searches* and examine the resulting documents for responsiveness and privilege determinations before production. The parties are negotiating the search criteria, custodians, and date range(s) for the search.

9.  **Metadata:** For native files and images generated from native electronic documents (*e.g.*, email and word processing documents), the parties shall provide the metadata corresponding to the fields set forth in Appendix A, where available and not subject to a claim of privilege, in the accompanying Load File.

(*See* Doc. 21, emphasis supplied.) Plaintiff has been operating under this Protocol.

Plaintiff filed the Motion to Compel on September 7, 2023 (Doc. 27). At that time, Defendants had produced few documents, and no ESI. As set forth in the Motion to Compel, Defendants had asserted general and boilerplate objections to every single document request that Plaintiff has served. (*See* Doc. 27.) Despite multiple conferences with Defendants, they have refused to withdraw these objections. Defendants have also indicated that they may rely on these boilerplate objections in the future. (Doc. 29-1 ¶ 4.)

On September 13, 2023, Plaintiff submitted a list of suggested search terms to apply to the collected data.[1] (Hudson Decl. ¶ 23 & Ex. 2.) Defendants refused. (*Id.* at Ex. 12.) Defendants also

---

[1] Defendants will likely argue that the search terms were received "too late." This is nothing short of ridiculous. With one exception, all of Defendants' ESI production has occurred after September 13, 2023, including a production as recently as November 9, 2023. While it is true that

refused to discuss the search terms, negotiate the search terms, or provide any information as to how responsive documents were being selected for production from the collected data. (Hudson Decl. ¶¶ 12-14.)

On September 20, 2023, the Parties conducted a meet and confer on the issues raised in the Motion to Compel. (Doc. 29-1 ¶ 3; Ex. A hereto ¶ 20 Ex. 13.) During that conference, for the first time, as Plaintiff's counsel was trying to understand Defendants' refusal to apply any of the requested search terms, Defendants revealed that they had not forensically gathered the documents as originally discussed in the June 2023 meet and confer and as contemplated by the ESI Protocol. Rather, Defendants were using a tool called "View Archive" to search emails from Defendants' network.[2] This tool does not allow search terms to be applied to the collected data to generate a hit report as is industry standard. Despite Plaintiff's many requests, Defendants have refused to run Plaintiff's requested search terms or even discuss those search terms. Defendants have not revealed what search terms they used to gather responsive documents.[3] (Hudson Decl. ¶¶ 14-16.)

---

it took Plaintiff several weeks to generate the search terms, this was complicated by the fact that Plaintiff requested, and Defendants refused for months to disclose, the review database that Defendants planned to use. (Doc. 23-1 at 43.) As this Court is aware, search syntax varies from database to database, and Defendants only disclosed that they were using Axcelerate, on August 10, 2023. (*Id.*) Thereafter, Plaintiff requested a syntax guide for Defendants' Axcelerate database as Plaintiff's counsel uses Relativity, but no guide was ever provided. Plaintiff then had to independently search for a syntax guide so Plaintiff's search terms would not be rejected wholesale if the search terms did not yield any hits. (Hudson Decl. at Ex. 10.) In any event, all of these efforts were in vain because it appears that Defendants did not forensically collect the information as originally agreed, and are using a non-standard "View Archive" portal to collect and search for documents.

[2] Plaintiff has researched this tool. It is not industry standard for ediscovery collection, search and production. Neither Plaintiff's firm's Litigation Practice Support Team (who specialize in ediscovery preservation, collection, and production) nor Plaintiff's retained forensic vendor were able to provide any clarity as to what this tool is or how it operates. That Plaintiff is still not certain how Defendants have preserved, collected, and produced documents after many attempts to meet and confer, only underscores the lack of transparency in Defendants' ediscovery efforts.

[3] Defendants will likely argue that the search terms returned too many hits. CITE. But this statement standing alone, without the benefit of further discussion and insight into a hit report that

Defendants will likely argue that their document production has been robust. This is only true from Defendants' perspective. In secret, Defendants have cherry-picked documents from the "View Archive" and have refused to share that methodology with Plaintiff.

These issues matter for several reasons. To begin with, we know that Mr. Arce has attempted to delete documents and directed Ms. Dillard to do so in attempts to hide their relationship from other court proceedings. (*See* Hudson Decl. ¶ 4.) This alone raises concerns regarding the integrity of Defendants' preservation, collection, and production efforts. Moreover, the secrecy with which Defendants have conducted discovery only amplifies Plaintiff's original concern that documents have been manipulated or destroyed. To date, Plaintiff has not found any of the documents that would have been deleted by Plaintiff at Mr. Arce's direction in Defendants' production.

### B. *Defendants' Discovery Responses and Tactics Violate the Rules.*

Plaintiff's efforts to coerce compliance with the Rules has been excruciatingly protracted. (*See* Hudson Decl. ¶ 23 *passim*.) Plaintiff has been required to engage in a series of emails requesting a meet and confer, followed by hours-long conferences wherein Plaintiff's counsel explains basic discovery rules that require Defendants to identify whether they are withholding any documents pursuant to any objection. (*See id.*) This conduct violates Rule number 1 of the Federal Rules of Civil Procedure requiring parties to employ the Rules "to secure the just, speedy, and inexpensive determination of every action and proceeding." Fed. R. Civ. P. 1. This conduct likewise violates Defendants' obligations to meet and confer in good faith to discuss the

---

would allow the parties to refine the terms means nothing. Defendants cannot discharge their burden by simply spitting out a number and refusing to further discuss the issues.

preservation and production of ESI, as required by Rule 26, not to mention Defendants' obligations under Rule 34.

Indeed, all of Defendants' discovery responses violate Federal Rule of Civil Procedure 34. Under Rule 34, a producing party has an obligation to collect and review ESI, and to share that information, in the form of a discovery response or otherwise, with the requesting party. *See, e.g., NRT Texas LLC v. Wilbur*, No. 4:22-cv-02847, 2022 WL 18404987, at *2 (S.D. Tex. Nov. 21, 2022) ("Though the parties' discovery disputes resulted in [Plaintiff] filing [] a motion to compel . . . Defendants were never relieved of their obligation to participate in discovery—and especially not relieved of their obligation to search for and collect communications from repositories that were known to both counsel and the parties"—including ESI). Where, as here, the producing party has thwarted discovery by refusing to conduct sufficient ESI searches on their internal systems, the Court should compel the party to do so.  *Wallace v. Tesoro Corp.,* No. SA-11-CA-00099-FB, 2016 WL 7971286, at *5 (W.D. Tex. Sept. 26, 2016) (granting motion to compel where producing party refused to run search terms). It is clear that no amount of cajoling absent a Court order can persuade Defendants to abide by their discovery obligations.

In addition to these violations, Defendants have also violated Rule 26(g), which requires Defendants to certify that the responses and objections are "consistent with these rules and warranted by existing law or by a nonfrivolous argument for extending, modifying, or reversing existing law, or for establishing new law." Fed. R. Civ. P. 26(g). It is obvious that Defendants have not read much less abided by their obligations under the Rules. In light of this, Plaintiff requests that the Court award Plaintiff her fees in connection with the Motion to Compel, to be proved up under separate cover. *See, e.g., Douglas v. Kohl's Dep. Stores*, No: 6:15-cv-1185-Orl-22TBS, 2016 WL 1588651 at *2 (M.D. Fla. Apr. 20, 2016) (awarding fees for motion to compel where

producing party relied on general objections concerning overbreadth without indicating whether responsive materials were being withheld); *FDIC v. Ark-La-Tex Financial Services, LLC*, No. 1:15 CV 2470, 2016 WL 3460236 at *5 (N.D. Ohio June 24, 2016) (awarding attorney's fees where producing party relied on laundry-list of general objections).

**DEFENDANTS' POSITION:**

Defendants have prepared this portion of the Advisory without the benefit of reviewing Plaintiff's position and the summary of outstanding issues despite their requests. As a result, the below advisory may not be fully responsive to the issues identified by Plaintiff.

Plaintiff's and Defendants' counsel have conferred for three one hour periods in connection with the hearing set on November 14, 2023 before this Court.

### 1. The Issues Raised in The Motion

As to specific requests identified in the Motion, Defendants have agreed to produce and did produce responsive records, which as outlined below, Defendants believed had been resolved almost entirely until November 8, 2023. To date, Defendants have produced over 14,000 items, in the format required by the ESI Protocol. Of requests identified in the Motion, Defendants believe the following have been fully resolved:

> INTERROGATORY NO. 1: Identify all persons who you believe have knowledge of relevant facts in the Complaint and identify the issues upon which you believe they have knowledge.

On September 14 , 2023 Defendants supplemented their answers. No further dispute was raised concerning the sufficiency of the Amended Answer during subsequent discovery conferences, thus Defendants deemed this issue resolved.

> REQUEST NO. 9: All documents referring or relating to payment of promotes from October 2020 through the present, including without limitation documents that demonstrate how the aggregate amount of money was distributed and to whom.

9

REQUEST NO. 10: All communications referring or relating to payment of promotes from October 2020 through the present, including without limitation documents that demonstrate how the aggregate amount of money was distributed and to whom.

On September 20, 2023 Defendants produced responsive documents including the summary of promote payments made to others [IRM_ARCE7173-79]. No further dispute was raised concerning the disclosure of promote payments to others during subsequent discovery conferences, thus Defendants deemed the disputes as to RFP Nos. 9 and 10 resolved.

With regard to deficiencies raised in p. 9, of the Motion concerning information related to Ms. Dillard's job responsibilities and performance, Defendants have agreed to produce and did produce: Ms. Dillard's entire employee file [IRM_ARCE00017-235], the purchase order approval workflow showing delays by Ms. Dillard [IRM_ARCE004757], correspondence showing Ms. Dillard's breach of company policy by forwarding confidential information, correspondence wherein Ms. Dillard refuses to work on certain accounts [IRM_ARCE012169-012169], correspondence where Ms. Dillard disparages IRM employees and clients, and violating company policy [IRM_ARCE005573-005577; IRM_ARCE0084014; IRM_ARCE010109-10111; IRM_ARCE009449] and various other similar communications as well as other communications concerning performance [IRM_ARCE004413; IRM_ARCE00096-106; IRM_ARCE001839; IRM_ARCE009297; IRM_ARCE010037; IRM_ARCE001865-001871]. Concerning Ms. Dillard's job responsibilities, Counsel has informed Ms. Dillard's counsel that there is not a specific job description which appears to be what Ms. Dillard seeks. However, IRM has provided documentation concerning performance expectations for all employees and executives. IRM has also provided Ms. Dillard's contract with IRM, including the confidentiality agreement [IRM_ARCE000211]. Defendants have further provided correspondence discussing Ms. Dillard's

10

responsibilities and performance failures [IRM_ARCE00001-16; IRM_ARCE005952-5955; IRM_ARCE008268-8269].

In addition, through conference, Defendants' Counsel learned of specific documents which Plaintiff's Counsel was looking for in the production and had been unable to identify and thus believed were missing. Those documents have since been identified by bates number and include:

- Documents and communications concerning Sarah Dillard's profit share information: IRM_ARCE011620-21; IRM_ARCE013489-91; IRM_ARCE014050-52.

- The email correspondence cited in the Complaint at ¶ 64 [Dkt. 1]:  IRM_ARCE004525.

- Documents and communications concerning the elimination of the position of president: IRM_ARCE009739-40; IRM_ARCE004384-86.

- Documents providing positive performance comments: IRM_ARCE004413; IRM_ARCE00096-106; 001839; 009297; 010037; 001865-001871

- Compensation of other employees:

| Employee Compensation Agreements | |
|---|---|
| Copies of Other Employee Compensation Agreements.pdf | IRM_ARCE004765 - IRM_ARCE004776 |
| Felicia Coker - Comp Package LMA FC (Signed).pdf | IRM_ARCE004777 - IRM_ARCE004777 |
| Joe Goss - Offer of Employment (Signed).pdf | IRM_ARCE004778 - IRM_ARCE004778 |
| Muhammad Sharif - Offer of Employment (Signed).pdf | IRM_ARCE004779 - IRM_ARCE004779 |
| Pam Plyler - Comp Package (Signed).pdf | IRM_ARCE004780 - IRM_ARCE004780 |
| Nick Dyer | IRM_ARCE004765 - IRM_ARCE004776 |
| Bill Rose | IRM_ARCE004765 - IRM_ARCE004776 |
| Sean Khiene | IRM_ARCE001977 - IRM_ARCE002016; IRM_ARCE002039 - IRM_ARCE002078 |
| Promote payment summaries | IRM_ARCE7173-79 |

2. *The November 8, 2023 Discovery Conference Email*

With the above issues resolved, and no specific documents or categories identified as missing, the discovery conferences on the eve of the hearing have evolved beyond the scope of the

11

Motion into allegations regarding wholesale omission of metadata from Defendants' production and allegations as to a failure to preserve the same.

On November 8, 2023 Plaintiff's Counsel informed that Defendants' production failed to comport with the ESI metadata requirements, and that they would seek relief concerning this alleged deficiency, which was raised for the first time on this day. Immediately, Counsel for Defendants inquired into the issue and the very next day was able to provide confirmation that metadata had been included as required by the ESI. On November 10, 2023 Defendant's Counsel further provided examples of the metadata fields populated for two documents identified as exemplars by Ms. Dillard's counsel.

With this issue resolved, the complaints then focused on the 146 search terms Plaintiff provided eight days after the motion was filed, with an expectation that all discovery be redone. Defendants maintain that this issue is beyond the scope of the Motion and Defendants have not been afforded the opportunity to provide evidence in support of their position.

Without identifying specific deficiencies in the production, Plaintiff maintains Defendants' productions are inherently deficient as Defendants have not agreed to re-do the entire document review upon receiving a list of 146 search terms which has yielded 1,660,000 results. After asking for months for search terms to no avail, Defendants have informed Plaintiff's counsel of their procedure for document collection within the View Archive platform. Dkt. 28. Ex. A-6. Defendant's counsel has used key terms associated with each request. . In addition, Defendant's counsel has engaged in an extensive review of all correspondence between Mr. Arce and Ms. Dillard from 2017-2021 and has produced the significant majority of those communications. But this too is unsatisfactory to Plaintiff.

*3.     The November 10 Discovery Conference Email*

In connection with preparing this advisory, Defendants requested to see Plaintiff's position on the outstanding issues, but Plaintiff's Counsel did not accommodate this request. Instead, on November 9, 2023 Plaintiff's Counsel referred to the November 8, 2023 email (the metadata complaints) as the substance of the content for their advisory. Ex. A.

On November 10, 2023, after clarification on the metadata complaints, Plaintiff's Counsel then informed Counsel for Defendants the issues to be addressed by the court would be:

1. That the Court deem all Defendants' objections waived, and stricken from Defendants' discovery responses;
2. That Defendants' redo their ESI collection and run Plaintiff's search terms through the collected data for the identified custodians in the identified date range;
3. Produce financial documents sufficient to calculate Plaintiff's damages in this case;
4. Award Plaintiff her costs, to be proved up under separate cover.

Defendants maintain these issues are not within the scope of the Motion. As outlined *supra*, the specific requests which Plaintiff has identified, have been addressed by Defendants' production, and Defendants objections concerning failure to include scope and time limitations are warranted as outlined in the Response. Dkt 28.

As to the dispute concerning the ESI protocol and collection procedures, Defendants also maintain the issue is beyond the scope of the Motion and have been deprived of the opportunity to present evidence regarding the adequacy of the process. Nonetheless as indicated *supra* Defendants' collection and review efforts far exceed the scope of this case and are adequate based upon Plaintiff's failure to provide search terms until after filing a motion to compel. In gathering and producing documents Defendants have complied with Fed. R. Civ. P. 34.

Next, Plaintiff's complaints concerning the lack of financials is unfounded, as detailed above, Defendants have provided extensive information concerning compensation of Ms. Dillard

13

and other employees as well as promote payments. To the extent Ms. Dillard seeks to invoke requests that are not the subject of this motion i.e. Requests for Production Nos. 87-90 such requests are part of Plaintiff's Fourth Set of Requests for Production and are not within the scope of this Motion. However, Defendants are available to confer on a potential compromise that addresses the confidentiality concerns that exceed the protections of the protective order.

Defendants dispute that Plaintiff is entitled to costs in connection with bringing this Motion. Through repeated and extensive conference efforts, Defendants' Counsel has attempted to resolve the issues raised. Those efforts include the production of over 14,000 pages, obtaining consent to disclose confidential information, attending hours long conferences during which Defendants' Counsel provided specific bates numbers for documents Plaintiff's Counsel believed were missing, and amending discovery responses to provided further guidance with specific relevant bates. None of these efforts have been sufficient to resolve the dispute because Plaintiff's Counsel has been unable to propose a viable resolution, and when solutions were proposed and Defendants complied, the issues escalated into redoing the entire collection and document review as a result of a failure to provide search terms until the Motion was filed. Defendants continue to be available for conference and willing to resolve discovery issues but have not been afforded the opportunity to do so.

Date: November 10, 2023

By: */s/Kristen E. Hudson*
    John R. Nelson
    Texas Bar No. 00797144
    Kristen E. Hudson
    Texas Bar No. 241200442
    Adam T. Walton
    Texas Bar No. 24093323
    Andrew J. Alvarado
    Texas Bar No. 034136
    DICKINSON WRIGHT PLLC
    607 W. 3rd Street, Suite 2500
    Austin, Texas 78701
    Telephone: (512) 770-4200
    Fax: (844) 670-6009
    jnelson@dickinson-wright.com
    khudson@dickinson-wright.com
    awalton@dickinson-wright.com
    aalvarado@dickinson-wright.com

    *Counsel for Plaintiff Sarah Dillard*

Respectfully submitted,

By: */s/ Aimee Vidaurri*
    Michael W. O'Donnell
    James I. Hughes
    Mario A. Barrera
    Aimee Vidaurri
    NORTON ROSE FULBRIGHT
    111 W. Houston Street, Suite 1800
    San Antonio, Texas 78205
    (210) 224-5575
    Mike.odonnell@nortonrosefulbright.com
    James.hughes@nortonrosefulbright.com
    Mario.barrera@nortonrosefulbright.com
    Aimee.vidaurri@nortonrosefulbright.com

    *Counsel for Defendants Internacional Realty Management & L. Miguel Arce*

**CERTIFICATE OF SERVICE**

On the 10th day of November 2023, I filed the foregoing document with the Court's electronic filing system, which served a true and correct copy of the foregoing document on all counsel of record via the Court's electronic service system.

                                                                */s/Kristen E. Hudson*
                                                                Kristen E. Hudson